

# SUPREME COURT OF ARKANSAS

**No.**

| | |
|---|---|
| IN RE SPECIAL TASK FORCE ON PRACTICE AND PROCEDURE IN CIVIL CASES – ARK. R. CIV. P. 9, 49, 52, AND ARK. R. APP. P.-CIV. 8 | **Opinion Delivered** August 7, 2014 |

## PER CURIAM

Our Special Task Force on Practice and Procedure in Civil Cases submitted proposed amendments to the Arkansas Rules of Civil Procedure and other rules affecting civil practice. These rules were referred to the Committee on Civil Practice and published for comment. *See In re Special Task Force on Practice & Procedure in Civil Cases*, 2014 Ark. 5 (per curiam); *In re Special Task Force on Practice & Procedure in Civil Cases – Final Report*, 2014 Ark. 47 (per curiam). Over forty comments were submitted. The Committee reviewed the proposed rules and the comments and submitted a report to the court.

Three rule changes were proposed to address allocation of fault, including nonparty liability, which arises under the provisions of Act 649 of 2003, codified at Ark. Code Ann. §§ 16-61-201 and 16-61-202(c), as amended by Act 1116 of 2013. These rules, Ark. R. Civ. P. 9, 49, and 52, seek to fill the procedural void resulting from procedural aspects of Act 649 that were struck on separation-of-powers grounds. *See Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135. The Committee on Civil Practice endorsed the rules as proposed by the Task Force except for several changes to Rule 9 that were suggested by those

who commented.[1]

We agree with the Task Force and the Civil Practice Committee that rules are needed in this area. We accept the rules that they have proposed. As with any rules, if problems surface or improvements are needed, the court will be receptive to addressing them, but these rules are a good start. Accordingly, we adopt Arkansas Rules of Civil Procedure 9, 49, and 52, as set out below, and republish them. In order to give the bench and bar time to acclimate to these changes and to allow our Committee on Model Jury Instructions–Civil time to consider the impact of these changes on jury instructions, the effective date for the

---

[1]Rule 9(h) is new. The underlined language was added by the Committee to the language proposed by the Task Force.

(h) *Allocation of Nonparty Fault; Notice.* (1) In an action for personal injury, medical injury, wrongful death, or property damage, a defending party seeking to allocate fault to a nonparty pursuant to Ark. Code Ann. § 16-61-202(c) or any other statute providing a substantive right to do so shall give notice as provided in paragraph (2) of this subdivision. This requirement does not apply with respect to a nonparty who has entered into a settlement agreement with the claimant.

(2) Notice shall be given in the initial responsive pleading, if the factual and legal basis upon which fault can be allocated is then known, or in an amended or supplemental pleading subject to the requirements and conditions of Rule 15 after the party discovers that information. The pleading shall:

(A) sufficiently identify the nonparty to permit service of process, regardless whether service can be made or the court has *in personam* jurisdiction over the nonparty; and

(B) state in ordinary and concise language facts showing that the nonparty is at fault for the personal injury, medical injury, wrongful death, or property damage alleged by the claimant.

(3) A party served with a pleading that identifies a nonparty pursuant to this subdivision may, within thirty (30) days after service, file an amended pleading pursuant to Rule 15 stating a claim against the nonparty.

(4) A party may not seek to allocate fault to a nonparty pursuant to Rules 49(c) or 52(a)(2) except by compliance with this subdivision (h). This subdivision does not prohibit a party from introducing evidence on any issue.

2

amendments to Rules 9,[2] 49, and 52 shall be January 1, 2015.

The Task Force and Committee on Civil Practice also agreed to recommend a revision to Ark. R. App. P.–Civ. 8 governing supersedeas bonds on appeal. We adopt this amendment, effective immediately, and republish the rule as set out below.[3]

The Reporter's Notes should be consulted for further explanation of the amendments to all the rules we adopt today.

The Task Force recommended revisions to Ark. R. Civ. P. 3, 11, and 42, and proposed a new Rule 11.1. In response to the comments received and considering its own concerns, the Committee on Civil Practice made substantive changes to Rules 11 and 42. Consequently, we are publishing these rules for comment in a separate per curiam order. The substantive change in proposed subsection (b)(5) of Rule 11 replaces the Rule 11.1 proposed by the Task Force that provided for a certificate of expert consultation. There were an overwhelming number of negative comments received from both the plaintiff and defense bar regarding the Rule 11.1 and Ark. R. Evid. 702 proposals. Although an alternative to Rule 11.1 is being considered, we decline to adopt the proposed amendments to Rule 702.[4] We share the sentiment expressed in the comments and by the Civil Practice Committee that Rule 702 should remain as is.

---

[2]Arkansas Code Annotated § 16-61-207 is superseded pursuant to § 16-11-301 as a result of this amendment to Rule 9 (see Reporter's Note).

[3]The amendments to Rule 8 result in Ark. Code Ann. § 16-55-214 and §§ 16-68-301 to -306 being superseded pursuant to § 16-11-301 (see Reporter's Note).

[4]*See In re Special Task Force on Practice & Procedure in Civil Cases – Final Report*, 2014 Ark. 47 (per curiam).

The remaining rule change proposed by the Task Force concerns Ark. R. Civ. P. 3, related to pre-suit notice for medical-malpractice cases. The Task Force, the Committee, and those who responded with comments all had various issues with this proposal. The Civil Practice Committee has submitted a revised proposal that is being published for comment in a separate per curiam order.

Finally, we once again acknowledge the work performed by the members of the Task Force in getting these rule changes off the ground. They have provided a valuable service to this court and to the legal profession. As always, we are indebted to our Civil Practice Committee and express our gratitude for its prompt response to the Task Force's proposals.

### I. Arkansas Rules of Civil Procedure

**Rule 9. Pleading Special Matters.**

. . .

(h) *Allocation of Nonparty Fault; Notice.* (1) In an action for personal injury, medical injury, wrongful death, or property damage, a defending party seeking to allocate fault to a nonparty pursuant to Ark. Code Ann. § 16-61-202(c) or any other statute providing a substantive right to do so shall give notice as provided in paragraph (2) of this subdivision. This requirement does not apply with respect to a nonparty who has entered into a settlement agreement with the claimant.

(2) Notice shall be given in the initial responsive pleading, if the factual and legal basis upon which fault can be allocated is then known, or in an amended or supplemental pleading subject to the requirements and conditions of Rule 15 after the party discovers that

4



information. The pleading shall:

(A) sufficiently identify the nonparty to permit service of process, regardless whether service can be made or the court has *in personam* jurisdiction over the nonparty; and

(B) state in ordinary and concise language facts showing that the nonparty is at fault for the personal injury, medical injury, wrongful death, or property damage alleged by the claimant.

(3) A party served with a pleading that identifies a nonparty pursuant to this subdivision may, within 30 days after service, file an amended pleading pursuant to Rule 15 stating a claim against the nonparty.

(4) A party may not seek to allocate fault to a nonparty pursuant to Rules 49(c) or 52(a)(2) except by compliance with this subdivision (h). This subdivision does not prohibit a party from introducing evidence on any issue.

**Addition to Reporter's Notes (2014 amendment):** New subdivision (h) creates the exclusive procedural mechanism for asserting the right to an allocation of nonparty fault created by Ark. Code Ann. § 16-61-202(c), as amended by Act 1116 of 2013, § 3, or by any other statute. Other states have placed similar provisions in their rules that govern the pleading of special matters. *E.g.*, Mich. Ct. Rule 2.112(k); Utah R. Civ. P. 9(*l*). Subdivision (h) draws in part on those rules and on Section 2 of Act 649 of 2003, codified at Ark. Code Ann. § 16-55-202, which was held unconstitutional on separation-of-powers grounds in *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135.

Under subdivision (h), a defendant asserts a contribution claim for allocation of

nonparty fault in an answer or amended answer. By contrast, a defendant seeking contribution for damages may bring a third-party claim against a nonparty under Rule 14 or a cross-claim against a co-party under Rule 13. The procedural section of the Uniform Contribution Among Tortfeasors Act, Ark. Code Ann. § 16-61-207, is inconsistent with Rule 9(h) and in some respects with Rules 13 and 14. Therefore, section 16-61-207 is superseded pursuant to Ark. Code Ann. § 16-11-301.

Notice under Rule 9(h) is necessary if a nonparty's fault is to be considered by the trier of fact. *See* 2014 Amendments to Rules 49 and 52. Under paragraph (h)(1), however, the notice requirement does not apply if a nonparty has settled with the claimant. When there has been a settlement, there is no need for notice in light of Ark. Code Ann. § 16-61-204(d), which provides that "the remaining defendants are entitled to a determination by the finder of fact of the released joint tortfeasor's pro rata share of responsibility for the injured person's damages."

Under paragraph (h)(2), notice must be given in the defending party's original responsive pleading, if the necessary information is then available, or in an amended or supplemental pleading under Rule 15. Unlike former section 16-55-202, under which notice could be given no later than 120 days before the trial date, paragraph (h)(2) contains no deadline. Although Rule 15 allows amended and supplemental pleadings as a matter of right, the court may, on motion, strike the amended or supplemental pleading or grant a continuance if it determines that "prejudice would result or the disposition of the cause would be unduly delayed."

Paragraph (h)(2)(A) requires that nonparties be identified in sufficient detail to permit service of process, even though service cannot be made and the court lacks *in personam* jurisdiction. This requirement guards against the practice of naming so-called "phantom tortfeasors." *See Brown v. Wal-Mart Discount Cities*, 12 S.W.3d 785 (Tenn. 2000). Paragraph (2)(B) parallels Ark. R. Civ. P. 8(a) in requiring the same fact pleading necessary in a complaint. The requirement in former section 16-55-202— "a brief statement of the basis for believing the nonparty to be at fault"—was uncertain in scope but well short of the fact-pleading standard.

Paragraph (h)(3) permits any party, within 30 days after being served with a pleading that identifies a nonparty, to amend his or her pleadings to assert a claim against the nonparty. Paragraph (h)(4) makes plain that the procedure set out in subdivision (h) is the exclusive method for allocation of nonparty fault under Rules 49(c) and 52(a)(2). It also emphasizes, as should be clear from the context, that subdivision (h) has nothing whatsoever to do with the admissibility of evidence. For example, defense counsel remain free to introduce evidence of proximate causation with respect to a nonparty in the course of raising the so-called "empty chair" defense.

**Rule 49. Verdicts and Interrogatories.**

. . .

(c) *Allocation of Fault*. (1) In an action for personal injury, medical injury, wrongful death, or property damage, the jury shall determine the fault of all persons or entities, including those not made parties, who may have joint liability or several liability for the



alleged injury, death, or damage to property. However, the jury shall determine the fault of a nonparty only if:

(A) the claimant entered into a settlement agreement with the nonparty, or a defending party has given notice, as provided in Rule 9(h), that the nonparty was wholly or partially at fault; and

(B) the defending party has carried the burden of establishing a *prima facie* case of the nonparty's fault.

(2) The jury shall allocate the fault, on a percentage basis, among those persons or entities, including those not made parties, found to have contributed to the injury, death, or property damage.

(3) Assessment of the percentage of a nonparty's fault shall be used only for determining the percentage of fault of the parties. A finding of fault shall not subject a nonparty to liability in any action or be introduced as evidence of liability in any action.

**Addition to Reporter's Notes (2014 Amendment):** Subdivision (c) implements Ark. Code Ann. §§ 16-61-201 & 16-61-202(c), as amended by Act 1116 of 2013. It is based in part on section 2 of Act 649 of 2003, codified at Ark. Code Ann. § 16-55-202(a), which was invalidated on separation-of-powers grounds in *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135. A corresponding change has been made to Rule 52(a), which applies in bench trials. Rule 9(h), cross-referenced in paragraph (1)(A), is the sole procedural mechanism for asserting the right to an allocation of nonparty fault created by Ark. Code Ann. § 16-61-202(c).

Paragraph (1) of subdivision (c) provides that, if certain conditions are met, the jury must determine "the fault of *all persons and entities*, including those not made parties, *who may have joint liability or several liability*" for the alleged harm. The italicized language is taken from Ark. Code Ann. § 16-61-201 and is intended to be coextensive with the statute. In tracking the statutory language, the rule is neutral on questions as to its scope, *e.g.*, whether the phrase "may have joint liability or several liability" includes persons or entities who are immune from suit or are beyond the court's jurisdiction.

As stated in paragraph (1)(A), the fault of a nonparty will be determined only if the claimant has settled with the nonparty or the defending party has given the notice required by Rule 9(h). Paragraph (1)(B) imposes another condition: "the defending party has carried the burden of establishing a *prima facie* case of the nonparty's fault." In other words, the defending party must produce sufficient evidence to warrant submission of the case to the jury. *Health Facilities Mgmnt. Corp. v. Hughes*, 365 Ark. 237, 244–45, 227 S.W.3d 910, 917 (2006). Placing this burden on the defending party is consistent with Act 649. *See* Ark. Code Ann. § 16-55-215 (Act 649 does not affect "existing law that provides that the burden of alleging and proving fault is upon the person who seeks to establish fault.").

Paragraph (2) is based on language in former section 16–55–202(a), and paragraph (3) is taken from former section 16–55–202(c)(2) & (3).

**Rule 52. Findings by the Court.**

(a)(1) *Effect*. If requested by a party at any time prior to entry of judgment, in all contested actions tried upon the facts without a jury, the court shall find the facts specially and

state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions, the court shall similarly set forth the findings of fact and conclusions of law that constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), and due regard shall be given to the opportunity of the circuit court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under these rules.

(2) *Allocation of Fault.* (A) In an action for personal injury, medical injury, wrongful death, or property damage tried without a jury, the court shall determine the fault of all persons or entities, including those not made parties, who may have joint liability or several liability for the alleged injury, death, or damage to property. However, the court shall determine the fault of a nonparty only if:

(i) the claimant entered into a settlement agreement with the nonparty, or a defending party has given notice, as provided in Rule 9(h), that the nonparty was wholly or partially at fault; and

(ii) the defending party has carried the burden of establishing a *prima facie* case of the nonparty's fault.

(B) The court shall allocate the fault, on a percentage basis, among those persons or entities, including those not made parties, found to have contributed to the injury, death, or property damage.

(C) Assessment of the percentage of a nonparty's fault shall be used only for determining the percentage of fault of the parties. A finding of fault shall not subject a nonparty to liability in any action or be introduced as evidence of liability in any action.

. . .

**Addition to Reporter's Notes (2014 amendment):** The text of subdivision (a) has been designated as paragraph (1) and paragraph (2) has been added. The latter implements Ark. Code Ann. §§ 16-61-201 & 16-61-202(c), as amended by Act 1116 of 2013. It is based in part on section 2 of Act 649 of 2003, codified at Ark. Code Ann. § 16-55-202(a), which was invalidated on separation-of-powers grounds in *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135. A corresponding change has been made in Rule 49, which applies to jury verdicts. For discussion, see the notes accompanying that rule.

## II.  Arkansas Rules of Appellate Procedure–Civil

**Rule 8. Stay Pending Appeal.**

. . .

(c) *Supersedeas bond*. (1) Whenever an appellant entitled thereto desires a stay on appeal, he shall present to the court for its approval a supersedeas bond which shall have such surety or sureties as the court requires. The bond shall be to the effect that appellant shall pay to appellee all costs and damages that shall be affirmed against appellant on appeal; or if appellant

fails to prosecute the appeal to a final conclusion, or if such appeal shall for any cause be dismissed, that appellant shall satisfy and perform the judgment, decree or order of the circuit court. However, the maximum bond that may be required in any civil action under any legal theory shall be limited to twenty-five million dollars ($25,000,000), regardless of the amount of the judgment.

(2) If a party proves by a preponderance of the evidence that the party who has posted a bond in accordance with paragraph (1) of this subdivision (c) is purposely dissipating or diverting assets outside of the ordinary course of its business for the purpose of evading ultimate payment of the judgment, the court may enter orders as are necessary to prevent dissipation or diversion, including requiring that a bond be posted equal to the full amount of the judgment.

. . .

**Addition to Reporter's Note (2014 amendment):** A second paragraph has been added to subdivision (c) of the rule, and the original text designated accordingly. The second paragraph and a new sentence at the end of the first paragraph are taken from section 17 of Act 649 of 2003, codified at Ark. Code Ann. § 16-55-214. With the adoption of these changes, the statute is superseded pursuant to Ark. Code Ann. § 16-11-301. Also superseded are Ark. Code Ann. §§ 16-68-301 to -306, outdated provisions referenced in section 16-55-214 that were enacted as part of the Civil Code of 1868.

The last sentence of paragraph (c)(1) sets the maximum amount of a supersedeas bond at $25 million, as did section 16-55-214. Like the statute, paragraph (c)(2) provides an

exception when necessary to prevent the appellant from diverting or dissipating assets to evade payment of the judgment.

BAKER and HART, JJ., dissent.

HOOFMAN, J., not participating.

**KAREN R. BAKER, Justice, dissenting.** I agree with Justice Hart's dissent and I join it. I write separately because I believe that the procedure followed by this court in the adoption of the proposed amendments to Ark. R. Civ. P. 9, 49, 52, and Ark. R. App. P.–Civ. 8 has failed to provide adequate notice to the bench, bar, and public prior to the adoption of these sweeping changes to our rules. In two separate per curiams issued this same date, we published for comment the recommendations for amendments to Ark. R. Civ. P. 3, 11, and 42 received from our Civil Practice Committee. Here, we should follow the same procedure concerning the recommendations made by the committee for amendments to Ark. R. Civ. P. 9, 49, 52, and Ark. R. App. P.–Civ. 8.

Prior to the adoption of these changes, the only notice to the bench, bar, and public that this court was considering these changes was the publication of the Special Task Force's interim and final reports in two separate per curiams in January of this year. *In re Special Task Force on Practice & Procedure in Civil Cases*, 2014 Ark. 5 (per curiam); *In re Special Task Force on Practice & Procedure in Civil Cases – Final Report*, 2014 Ark. 47 (per curiam). While this provided some notice of the Special Task Force's recommendations, it is simply inadequate to apprise the bench, bar and public that this court would adopt those recommendations as to Ark. R. Civ. P. 9, 49, 52, and Ark. R. App. P. - Civ. 8.

Further, there is no need for this court to consider the recommendations of the Special Task Force and the proposed rule changes by the Civil Practice Committee in such a piecemeal fashion. Instead, we should follow the same procedure for the proposed changes to Ark. R. Civ. P. 9, 49, 52, and Ark. R. App. P.–Civ. 8 as is being employed for the proposed changes to Ark. R. Civ. P. 3, 11, and 42.

Accordingly, I respectfully dissent.

HART, J., joins.

**JOSEPHINE LINKER HART, Justice, dissenting.** In *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241, 308 S.W.3d 135, this court held that provisions of Act 649 of 2003 were unconstitutional, stating that by "setting up a procedure to determine the fault of a nonparty and mandating consideration of that nonparty's fault in an effort to reduce a plaintiff's recovery," the General Assembly "offend[ed] the principle of separation of powers." That opinion, however, failed to address other possible constitutional infirmities. Today, through the votes of four justices—including three who decided *Johnson*—these same procedures now rise, Phoenix-like, from the ashes. I, however, respectfully dissent from the promulgation of these rules. First, the rules are unclear. Second, the rules are unfair. Third, the rules may not survive further constitutional scrutiny. Fourth, there are other solutions.

As to clarity, Rule 49(c)(1) provides that "the jury shall determine the fault of all persons or entities, including those not made parties, who may have joint liability or several liability," and Rule 49(c)(2) provides that the "jury shall allocate the fault, on a percentage basis, among those persons or entities, including those not made parties, found to have

contributed to the injury, death, or property damage." Similar provisions are found in Rule 52(a)(2), which apply when the trial court sits as the finder of fact. Accordingly, in determining fault, the finder of fact examines those "who *may have* joint liability or several liability." (Emphasis added.) If the nonparty is immune from suit, however, the nonparty will not have joint or several liability. With the adoption of this rule, it is not clear whether the finder of fact is to determine this nonparty's fault or whether the nonparty's fault is considered despite the nonparty's immunity. Further, these rules do not define what is meant by "contributed to" the injury, death, or property damage and how this concept interacts with our law of comparative fault. Also, Rule 49(c)(1)(B) and Rule 52(a)(2)(A)(ii) require that "the defending party" must carry "the burden of establishing a *prima facie* case of the nonparty's fault." Neither of these provisions, however, explain whether the evidence is to be viewed in the light most favorable to the defending party or to the plaintiff. Nor do these provisions explain whether the finder of fact weighs the evidence and the credibility of the evidence. These questions, presumably, are left to be answered in later litigation and appeals.

As to the fairness of these rules, in some instances it does not make sense to allocate fault to a nonparty when the nonparty's fault is also the defendant's fault, and in other instances, it is unfair to shoulder the plaintiff with the brunt of the damages. These instances include indivisible injuries or those involving a defendant and a nonparty who act in concert, are in vicarious liability relationships, engage in intentional acts, or fail to prevent intentional injury, and where the nonparty is immune from suit or manufactures a product beyond the



reach of the courts.[1]

For an example of unfairness, consider an instance in which the nonparty has committed a felony, such as a rape, and the defendant owed a duty to protect the plaintiff. It would be the rapist, now incarcerated and without assets, who would account for the lion's share of fault. The plaintiff would bear the brunt of the damages. Consider also a situation involving injuries sustained from the use of a product that was manufactured by an entity beyond the reach of the courts, for instance, an overseas manufacturer. The plaintiff essentially is without recourse, as the injured party can only pursue the retailer, whose fault is limited. Rule 9(h)(2)(A) purports to give notice to the plaintiff through a pleading that shall "sufficiently identify the nonparty to permit service of process, regardless whether service can be made or the court has *in personam* jurisdiction over the nonparty." The Reporter's Notes suggest that the purpose of the language is to guard against the "practice of naming so-called 'phantom tortfeasors.'" This provision, however, does not address those tortfeasors beyond the reach of the courts.

This all brings into play whether the rules would offend the Arkansas Constitution. Our state constitution provides that "[e]very person is entitled to a certain remedy in the laws

---

[1]I am mindful that Arkansas Code Annotated section 16-55-205(a) (Repl. 2005), provides that "a party is responsible for the fault of another person or entity or for payment of the proportionate share of another person or entity if both the party and the other person or entity were acting in concert or if the other person or entity was acting as an agent or servant of the party." The rules, however, do not provide for this exception, and it is unclear whether this statute would apply to nonparties. Moreover, "acting in concert" is narrowly defined as "conscious[ ] agree[ment] . . . to commit the intentional tort." Ark. Code Ann. § 16-55-205(b)(3).

for all injuries or wrongs he may receive in his person, property or character." Ark. Const. art. II, § 13. Further, it provides that "no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property." Ark. Const. art. V, § 32. The rules do not even begin to address the implication of these constitutional provisions; this is dangerous because these rules will, in practice, limit an injured party's recovery and provide no remedy in law to the injured party. Thus, in future appeals, this court will face the unenviable task of considering the constitutionality of its own rules. Likewise, the rules implicate provisions of the federal constitution, and a federal court opinion already casts doubt upon the constitutionality of the rules. *Billings v. Aeropres Corp.*, 522 F. Supp. 2d 1121 (E.D. Ark. 2007). We should not adopt rules that cast further doubt on the fairness of our rulemaking.

This court, guided by precedent, develops the common law from the facts presented in each case; it is a deliberate and incremental process. In promulgating these rules, however, this court has cast aside precedent, rejected the common-law process, and created new law, stating that "these rules are a good start," and "if problems surface or improvements are needed, the court will be receptive to addressing them." Today, we venture into quasi-legislating by adopting rules drafted by an appointed, not elected, Special Task Force, and vetted by an appointed, not elected, Committee on Civil Practice. Rather than create new law out of whole cloth, we should allow the common law to develop over time, on a case-by-case basis, driven by the facts. If we are not willing to do so, we should reexamine our holding in *Johnson* and permit the General Assembly to make the law. At least then we could

17

SLIP OPINION

consider whether the General Assembly's laws pass constitutional muster without the conflict of interest that will arise when we are asked to address the same question about our rules.

Furthermore, in adopting this labyrinthine set of rules governing allocation of fault, we venture into the creation of substantive law, not procedural law, and we, ourselves, violate the dictates of separation of powers. Had the majority sought to effect a procedural rule, they could have done so by providing a simple jury instruction advising the jury not to allocate to the defendant the fault of any other entity and to allocate to the defendant only the fault attributable to the defendant's acts or omissions, thus avoiding the problems engendered by the adoption of these rules.

BAKER, J., joins in this dissent.